## TOMPKINS v. HARRISBURG AUCTION HOUSE.

## In re SYKES.

### No. 4977.

Circuit Court of Appeals, Third Circuit.

Feb. 25, 1933.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

By an instrument in writing, bearing date August 9, 1930, David Cramer, trading as Harrisburg Auction House, either leased or sold store fixtures to David B. Sykes, a merchant. After a time Sykes was adjudged a bankrupt. Cramer then filed with the referee a petition of reclamation, asserting title to the property under the writing between himself and Sykes which purports to be a bailment. The referee found it a conditional sale; the court, a bailment. The trustee appealed.

Evidently the instrument was drafted by a person familiar with the Pennsylvania law of bailments and conditional sales. It describes itself as a "contract of renting" and expressly disclaims that it is a conditional sale. It speaks of the parties as lessor and lessee, provides for monthly rentals in given amounts for a stated term, stipulates that on default of any monthly installment of rent, the remaining rent shall immediately become due and payable, and contains a power of attorney to confess judgment on default of a single installment for the full amount of rent, with a waiver of exemption and without stay of execution. The instrument contains no provision for return of the property at the end of the term [which may be implied, Jacquard Knitting Machine Company v. Vennell (C. C. A.) 59 F.(2d) 496], and no option of purchase by the lessee. If this were the whole case we think the contract would conform to the law of bailments as declared by Pennsylvania courts and the claimant would be entitled to the property as against creditors of the bankrupt. Potter v. N. Stetson & Co., 11 Pa. Super. Ct. 627; Stiles v. Seaton, 200 Pa. 114, 49 A. 774;

486

Commonwealth v. P. R. T. Co., 287 Pa. 190, 134 A. 455; In re Manolis (D. C.) 44 F.(2d) 664, 665. But—again under Pennsylvania law which in these cases is very positive—it is permissible, indeed it is necessary, to look at the real nature of the transaction to determine whether it is a bailment or conditional sale, the policy of the Commonwealth being firmly against the latter. Fully to carry out this policy, it is ruled that, in deciding whether a writing is one or the other, courts should not be controlled by technical terms and especially they should not be influenced by the name given a contract, as "the law pays little heed to the label," but should look beneath and examine the nature of the transaction between the parties and look through the screen of paper title to ascertain what was the real situation. Bowser & Co. v. Franklin Mortgage & Investment Co., 305 Pa. 459, 158 A. 170; Brunswick & Balke Co. v. Hoover, 95 Pa. 508, 40 Am. Rep. 674; Root v. Republican Acceptance Corp., 279 Pa. 55, 123 A. 650. To these authoritative guides to a proper understanding of the transaction, we shall add one of our own, namely; the manner in which the parties themselves interpreted the contract.

 Though skillfully drawn by the use of terms technically appropriate to a bailment, the writing, in the light of conduct of the parties presently to be mentioned, reflects a different construction.

The contract purports to lease fixtures for the full equipment of a store. It places the value thereof at $1,290, and provides a down payment of $290 and rentals of $100 a month for a short term of ten months. In other words it provides that the down payment and ten monthly payments shall precisely equal the admitted value of the articles, which (though not conclusive) evidences a sale. Ott v. Sweatman, 166 Pa. 217, 31 A. 102; Kelly Springfield Road Roller Co. v. Spyker, 215 Pa. 332, 64 A. 546. It makes no provision for rentals after the term. On June 9, 1931, the term ended. Thereafter the lessee continued in possession of the fixtures until his trustee in bankruptcy was elected on April.13, 1932, that is for a period of ten months after the expiration of the lease, without paying, or being asked to pay, any rent, or being called upon to return the fixtures, so far as the evidence shows. The trustee remained in undisputed possession until May 19, 1932, the day set for their sale, when Cramer, claiming ownership, instituted reclamation proceedings. This was a tardy assertion of an owner's rights. 3 Vale Pa. Digest 4108. The referee granted a rule against the trustee to show cause and issued a subpœna duces tecum upon the bankrupt to appear and bring with him certain checks which he had given Cramer, showing, according to the trustee's answer, full payment for the fixtures purchased. On return of the rule, the bankrupt failed to appear. Thereupon the referee heard testimony, secondary in character, as to the contents of one check to this effect:

After the contract and before bankruptcy, a check drawn by Sykes for an amount "around $500," made payable to and endorsed by Cramer, passed through the maker's bank. It bore a notation "In Payment of Fixtures," according to the testimony of one bank officer, and, payment in full for fixtures, as testified by another officer who did not remember the exact words. Both related circumstances which fixed the matter in their minds. Cramer, if present, did not testify; or, if he testified, the record does not show it. This payment by check, made by one party and accepted by the other, bearing a notation of its purpose contrary to that of a rental and not being contradicted, is accepted as conduct of the parties interpretive of their contract as one of purchase which is consistent with its provisions—something more than coincidence—giving the value of the fixtures and placing the rentals at the same figure.

We are constrained to hold the transaction a conditional sale, not good under Pennsylvania law against creditors of the bankrupt, Ott v. Sweatman, 166 Pa. 217, 229, 31 A. 102, and that accordingly the order of the District Court overruling the referee and directing delivery of the chattels to the claimant should be reversed.