679 P.2d 142

R.H. PIERCE MANUFACTURING PORATION, an Oregon corporation, Plaintiff-Respondent,

v.

CONTINENTAL MANUFACTURING CO., INC., an Idaho corporation, Defendant-Appellant,

and

Bill W. Nichols and Ramona Nichols, husband and wife; Charles Park and Billie Park, husband and wife; and Elma Lott, a divorced woman, dba Lott Enterprises, Defendants-Respondents.

CONTINENTAL MANUFACTURING CO., INC., an Idaho corporation, Defendant-Counter Claimant-Appellant,

v.

R.H. PIERCE MANUFACTURING CORPORATION, an Oregon corporation, Plaintiff-Counter Defendant-Respondent.

CONTINENTAL MANUFACTURING CO., INC., an Idaho corporation, Defendant-Cross Claimant-Appellant,

v.

Bill W. NICHOLS and Ramona Nichols, husband and wife; Charles Park and Billie Park, husband and wife; and Elma Lott, a divorced woman, dba Lott Enterprises, Defendants-Cross Defendants-Respondents.

Bill W. NICHOLS and Ramona Nichols, husband and wife; Charles Park and Billie Park, husband and wife; and Elma Lott, a divorced woman, dba Lott Enterprises, Defendants-Counter Claimants-Respondents,

v.

R.H. PIERCE MANUFACTURING CORPORATION, an Oregon corporation, Plaintiff-Counter Defendant-Respondent.

Bill W. NICHOLS and Ramona Nichols, husband and wife; Charles Park and Billie Park, husband and wife; and

Elma Lott, a divorced woman, dba Lott Enterprises, Defendants-Cross Defendants-Cross Claimants-Respondents,

v.

CONTINENTAL MANUFACTURING CO., INC., an Idaho corporation, Defendant-Cross Complainant-Cross Defendant-Appellant.

No. 13493.

Supreme Court of Idaho.

March 28, 1984.

Richard Dale Greenwood, Twin Falls, for defendant-appellant.

Thomas H. Church, Church, Church, Snow & Tuft, Burley, Larson, McIntyre & Coleman, Twin Falls, for plaintiff-respondent.

HUNTLEY, Justice.

■ This appeal, while arising from a very complex series of transactions and events, presents a relatively simple question: Whether an optionor may properly refuse to tender its agreed performance under an option contract when:

(a) the optionees (or their successors) cannot agree and each seeks to exercise the option to the exclusion of the other; and

(b) the successor in interest of one of the optionees has executed on part (but not all) of the leasehold estate of the optionee.

We answer the question in the negative and reverse and remand for further proceedings.

In abbreviated form, the transactions and events in order of occurrence, are:

1. Lott Enterprises (as owner and lessor) executed a five-year lease to Wiser Enterprises, Inc. and Emery Wiser as lessees, of a parcel of land upon which lessees planned to (and later did) construct a building.

2. The lease contained an option to purchase either for $31,500 cash or under an installment option.

3. A money judgment was obtained against Wiser Enterprises, Inc., by R.H. Pierce Manufacturing Co., which judgment was duly recorded.

4. The two lessees assigned the lease and option to Continental Manufacturing Company.

5. Pierce levied on the real estate at the execution sale and bid in its judgment amount seeking to purchase the Wiser Enterprise, Inc. interest, in which levy and sale, the notices described a portion (but not all) of the leased premises.

6. Continental gave timely notice of intent to exercise the option in its own (sole) behalf, tendering the cash purchase price.

7. Pierce gave timely notice of intent to exercise the option in its own (sole) behalf under the time contract option.

■ Pierce filed an action for declaratory judgment against Continental and Lott, which resulted in counterclaims and cross-claims. Pierce moved for summary judgment on its complaint seeking a declaration that its exercise of the option was valid and enforceable, which motion was denied. Lott moved for summary judgment on its counterclaim and cross-claim for quiet title, which motion was granted, and this appeal followed. Lott contends its obligation to sell the property under the option was excused by the above-described events. We disagree. The power of an option holder is the power of acceptance, and by giving notice of exercise of the option within the agreed time limit, an offer is accepted. 1A Corbin on Contracts (1963 ed.) § 264, p. 508. Moreover, "notice by ... [an optionee] is not merely the acceptance of an offer; it is also the performance of a condition precedent to ... [an optionor's] duty of immediate performance." *Id.* at 509. Therefore, once Lott received notice of exercise of the option by one of the optionees, its offer under the option contract was accepted and it was obligated to perform. The fact that the second optionee did not join, and in fact

attempted to initiate its own exercise of the option, did not excuse Lott's performance. Whatever the rights of Continental and Pierce are, vis a vis one another, Lott's proper action was to tender its agreed performance by way of interpleader, leaving it to the trial court to resolve the dispute as between Pierce and Continental. RESTATEMENT (SECOND) OF CONTRACTS § 339 comment d (1979).

As guidance to the trial court on remand, we would note that "the rights of promisees of a single performance are determined in accordance with the rules of equity," 4 Corbin on Contracts, *supra*, § 939, pp. 785–86, and that when one of two co-optionees exercises an option, he cannot do so in derogation of the rights of the other. His exercise of the option is impressed with a trust in favor of the second and if the second thereafter, and in a timely manner on being notified to close, tenders his share of the option price, he is entitled to participate equally in the purchase.

We further note that we are unable to determine from this record whether Pierce accomplished a proper and complete execution on the interest of Wiser Enterprises, Inc. in the option. The option is a contract right which might require execution or levy on something other than the land itself. Since the facts on this issue were not fully developed below, and the issue not adequately briefed on appeal, we leave it for determination by the trial court on remand.

Accordingly, the judgment of quiet title is reversed and the case remanded for further proceedings consistent herewith, including trial on the merits as to the rights of Continental and Pierce *inter se* regarding the option, and whether the attempted exercise of the option by either Pierce or Continental was procedurally correct in accordance with the terms of the lease agreement and the applicable statutes.

Costs to appellant. No attorney's fees awarded.

DONALDSON, C.J., and BISTLINE, J., concur.

BAKES, Justice, dissenting:

I disagree with the majority opinion's characterization of the issue presented here. In order to see the issue clearly, it is necessary to look more closely at the factual situation presented.

Prior to the events outlined herein, Lott Enterprises (Lott) was the owner of a parcel of real property described as follows:

"Lot 4, Block 1; Lot 1, Block 2; Lot 3, Block 4, of the Midway Subdivision in the County of Minidoka, State of Idaho, as the same is platted in the official plat now of record in the office of the county recorder of the County of Minidoka, State of Idaho."

In 1974, Lott entered into a lease/option agreement with two co-lessees, Wiser Enterprises, Inc. (Wiser, Inc.), and Emery Wiser (Wiser) as an individual. The agreement was titled "Lease of Real Property with Option to Purchase." It outlined numerous rights and duties of each of the parties, both the lessor and the co-lessees, including the "grant unto the lessees an option to purchase ...."

On March 15, 1976, a judgment was entered in favor of Pierce Manufacturing Company (Pierce) against Wiser, Inc., on an unrelated matter.[1] The judgment was recorded on the same day it was obtained, and thus became a lien on all real property owned by Wiser, Inc. Then, on September 6, 1978, Pierce obtained a writ of execution, and a sheriff's sale was held of Wiser, Inc.'s interest in a portion of the real estate described in the lease/option, consisting of Lot 1, Block 2, and part of Lot 3, Block 4, of the previously noted legal description. Pierce then bid in the amount of its judgment. Thus, Pierce was substituted as a co-lessee for any interest owned by Wiser,

---

1. Although not apparent from this record, at oral argument it was asserted that Pierce also obtained a judgment against Emery Wiser as an individual, but no action was ever taken to collect against this judgment.

Inc., as of the date of filing its judgment, in that real property subject to the execution sale.

On September 30, 1977, Wiser, Inc., and Wiser, as an individual, with the consent of Lott, made an assignment of their interests in the lease/option to Continental Manufacturing Company (Continental). Continental thus became substituted for Wiser and any interests of Wiser, Inc., that had not been transferred by operation of law to Pierce by virtue of its lien and execution sale.

On November 22, 1978, Continental attempted to exercise the option by giving notice to Lott of its desire. On December 19, 1978, Pierce also gave notice to Lott that it was exercising the same option. Because of the conflicting claims, Lott refused to accept either notice of exercise of option. Pierce then filed a three-count complaint seeking a declaratory judgment decreeing that it had acquired the right to exercise the option, seeking to foreclose the interests of unknown defendants who might claim interest in the property, and demanding an accounting of rentals paid by a sub-lessee to Continental. Named as defendants in the suit were both Lott and Continental. Continental answered and counterclaimed against Pierce and cross-claimed against Lott for specific performance of the option. Lott answered, counterclaiming against Pierce, and crossclaiming against Continental, seeking to quiet title in it as against Pierce and Continental. Both Pierce and Lott then moved for summary judgment. The court denied Pierce's motion and granted Lott's motion, quieting title to the property in Lott and declaring Lott entitled to rentals from the sub-lessee as of April 1, 1979. Continental has appealed.[2]

The precise question of law presented on this appeal is: If an option is held by two or more parties jointly, may it be exercised by one of the co-optionees alone? This question should be answered in the negative, for the reasons outlined in this opin-ion. Thus, since the attempted exercise by one co-optionee (and later attempt by another co-optionee) was not a valid exercise of the option, the optionor was justified in refusing the attempted exercise and the option later expired without a valid exercise. Thus, the trial court was correct in granting summary judgment to Lott and quieting title in it, and its opinion should be upheld.

Before analyzing this question further, it is first necessary to indicate why Pierce and Continental were co-optionees, and thus could only jointly exercise the option. Although both Wiser and Wiser, Inc., transferred all of their respective interests in the lease/option to Continental, Wiser, Inc.'s, attempted transfer of its interest in the lease/option to Continental was ineffective as to the portion of property subject to the execution sale, because Wiser, Inc., no longer had any such interest. A lease is clearly an interest in real property which is subject to a judgment lien against any interest in real property. The judgment lien obtained by Pierce had been recorded *before* the assignment of Wiser, Inc., interests to Continental, and the subsequent sale on foreclosure would allow Pierce's interest in the lease to relate back to the date the judgment lien was filed, thus preceding in priority the assignment to Continental. I.C. § 10–1110 (judgment becomes a lien on all real property owned on the date of filing). *See* Thompson on Real Property § 5304 (when levy and sale made, title relates back to effective date of lien so as to cut off subsequent interests); *see also Jackson & Scherer, Inc. v. Washburn,* 496 P.2d 1358 (Kan.1972); *Merideth v. United States,* 327 F.Supp. 429 (N.D.Miss. 1970); *Eloff v. Riesch,* 14 Wis.2d 519, 111 N.W.2d 578 (1961); *Brownley v. Lincoln Co.,* 218 Or. 7, 343 P.2d 529 (Or.1959); *Onyx Refining Co. v. Evans Production Corp.,* 182 F.Supp. 253 (N.D.Tex.1959). Thus, as of the date of the judgment lien, Pierce became a co-lessee in that portion of

**2.** Pierce has neither filed a brief nor participated in oral argument, but is still a party to the action.

the property covered by the execution sale, replacing Wiser, Inc., as to that portion.[3]

The lease/option is one cohesive agreement, and the right to exercise the option in the lease is specifically granted to the co-lessees and not to Emery Wiser and Wiser Enterprises, Inc. The language used by the trial judge makes it clear that his reason for granting summary judgment was that the option had to be exercised by the *co-lessees* jointly because the lease specifically gave the option to the co-lessees. The interpretation of an unambiguous written instrument is a question of law to be determined by a trial judge on summary judgment. It is also a question that can be reviewed by an appellate court. From a review of the document itself and the trial court's opinion, it is clear that the trial court's interpretation was correct. His opinion that the option could be exercised only by co-lessees jointly was based on the plain language of the option contained in the lease. Two succeeding paragraphs on the first page of the lease read as follows:

"Whereas, the lessees desire to lease of and from the owner the hereinbefore described real estate; and,

"Whereas, the lessees also desire that the owner give and grant unto the lessees an option to purchase the said real estate ...."

The granting of and paying for a lease of real property can constitute the consideration for an option to buy the same real property, making it an irrevocable offer for the life of the lease.[4] *See Carleno v. Vollmert Tire Co.*, 540 P.2d 1149 (Colo.App. 1975); *Helbig v. Bonsness*, 227 Wis. 52, 277 N.W. 634 (1938). Since the consideration for the option in this case was the lease itself, the lease and option must be considered jointly, and entities having the status of co-lessees under the lease also maintain the status of co-optionees for purposes of exercising the option.

The trial court's interpretation of the joint nature of the option is supported by law. When more than one person holds an interest in an option, then "the consent of all persons having an interest in an option is necessary to its exercise by any one of them." 17 Am.Jur.2d, Contracts, § 60, p. 397. Here, both Pierce and Continental had an interest in the option by virtue of the fact that Pierce and Continental were co-lessees under the lease. In *In re Estate of Maguire*, 204 Kan. 686, 466 P.2d 358 (1970), the question presented to the court was whether one of two co-optionees could exercise the option after the death of the other co-optionee. After ruling that the right of the deceased co-optionee did not survive her, the court ruled that "an option granted to two or more optionees must be exercised by them all, absent circumstances clearly indicating a contrary design on the part of the optionor." *Id.* 204 Kan. 686, 466 P.2d at 362. The interpretation of the contract in this case leaves no room for doubt that the co-lessees were granted the option jointly, with no indication that it could be exercised by one or the other alone. *See Myers v. Western Realty & Constr., Inc.*, 130 Ariz. 274, 635 P.2d 867 (1981) (wife's first attempt to exercise option granted to husband and wife as co-les-

---

**3.** Thus, although interest in the entire property was undivided and shared equally by the co-lessees, their interests in each of the lots can be determined by reference to the portion of property transferred through foreclosure. As to Lot 4, Block 1, it was not subject to foreclosure; thus, the assignment by Wiser, Inc., and Wiser to Continental effectively transferred the entire interest to Continental. As to Lot 1, Block 2, the foreclosure of Wiser, Inc.'s, interest transferred that undivided interest to Pierce and the later transfer of Wiser's interest to Continental effectively transferred Wiser's undivided interest; thus, Pierce and Continental both had an interest in that lot. As to Lot 3, Block 4, the part of that lot subject to foreclosure was effectively held by both Pierce and Continental by virtue of Pierce's acquisition of Wiser, Inc.'s, portion, and Continental's acquisition of Wiser's portion. The remainder of Lot 3, Block 4, was transferred solely to Continental by virtue of the assignment from Wiser, Inc., and Wiser. However, regardless of the complicated nature of these separate interests, as to the entire property, and as against Lott, Pierce and Continental were co-lessees, and thus could only exercise the option portion of the lease option contract jointly.

**4.** Appellant admitted that the lease was the consideration for the option.

sees was invalid because wife could not exercise option alone); *Pratt v. Prouty,* 104 Iowa 419, 73 N.W. 1035 (1898) (attempted exercise by one of three co-optionees to stock purchase not valid). *See also Gurunian v. Grossman,* 331 Mich. 412, 49 N.W.2d 354 (1951) (one of two co-lessees cannot exercise option to renew lease). *See generally* 62 Am.Jur.2d, Powers, § 32, p. 130 (power given to joint donees, all must join in executing it).

Because the lease and option were dependent, the ability to exercise the option was dependent upon ownership of the lease. Because Pierce and Continental, under the facts of this case, were co-lessees, and because the co-lessees were jointly granted the right to the option, the option must have been exercised by the co-lessees jointly. Because this right was never exercised jointly, which because of its nature it must have been within the life of the lease, the option was never exercised, and Lott should be deemed to still hold title to the property involved. *See Sports Premiums, Inc. v. Kaemmer,* 42 Colo.App. 172, 595 P.2d 696 (1979) (if option not exercised within time specified, rights of optionee expire). *See also* cases holding that option must be exercised strictly according to its terms, *Rogers v. Jones,* 126 Ariz. 180, 613 P.2d 844 (1980); *Rosenthal v. Sandusky,* 35 Colo.App. 220, 533 P.2d 523 (1975); *Master Builders, Inc. v. Cabbell,* 95 N.M. 371, 622 P.2d 276 (1980); *Patterson Lumber Co. v. Lewis,* 47 Or.App. 705, 615 P.2d 372 (1980). While the little authority cited by the majority for its position, *i.e.,* "the power of an option holder is the power of acceptance," *infra* at 143, may well be true in a simple optionor-optionee case, it is not applicable to a fact situation such as this where the option to purchase is jointly held by more than one entity. The majority cites no authority for its opinion that the rules of equity apply or that "when one of two co-optionees exercises an option, he cannot do so in derogation of the rights of the other," *infra* at 144, possibly because there is no authority to support those conclusions. Instead there is an abundance of sound authority holding that in a fact situa-

tion such as presented here, the option *must* be exercised jointly, or not at all. The judgment of the trial court should be affirmed.

SHEPARD, J., concurs.