388

767 P.2d 1178

Rex HUTCHENS and Cheryl Hutchens, husband and wife; Gerald McCallum and Sherrie McCallum, husband and wife, Appellees/Cross–Appellants,

v.

Edward A. LINDEN and Gloria A. Linden, husband and wife, Appellants/Cross–Appellees.

No. 2 CA–CV 87–0256.

Court of Appeals of Arizona, Division 2, Department A.

April 5, 1988.

As Corrected April 13, 1988.

Reconsideration Denied Sept. 8, 1988.

Review Denied Feb. 22, 1989.

Dennis L. Parrott, Ltd. by Susan A. Light, Tucson, for appellees/cross-appellants.

Linden, Chapa & Fields by Richard S. Fields and Patricia A. Duffy, Tucson, for appellants/cross-appellees.

OPINION

HOWARD, Presiding Judge.

This is an appeal from the trial court's awarding of attorney's fees to the appellees and from the failure to award appellants their attorney's fees. Appellees have filed a cross-appeal contending the trial

court did not enter a sufficient award in their favor.

This case turns on the following question. Can a person obligated by contract to make an installment payment on a promissory note refuse to pay on the ground that more than one person is claiming the right to the payment? We hold that he cannot and must file an action for interpleader and pay the amount due into court in order to avoid being in default.

On October 29, 1984, the appellees, Hutchens and McCallum, executed a promissory note in the amount of $172,400, secured by a deed of trust, in favor of Home Associates, Inc. The note provided for monthly payments of "interest only" of $2,729.67 and payment of the entire principal amount when the note matured on October 29, 1985. Lemons & Associates, Inc., acted as collection agent for Home Associates, Inc. First American Title was the trustee on the deed of trust.

On March 8, 1985, the beneficial interest in the deed of trust was assigned by Home Associates, Inc., to the appellants. On April 10, 1985, Lemons & Associates filed a voluntary bankruptcy petition in the federal court in Reno, Nevada, seeking to reorganize under federal bankruptcy law.

On April 16, the appellants notified appellees' attorney that the appellants were the present beneficiaries and that payments on the note should be made directly to them. Appellees, acting through their attorney, made the payments to appellants through August 1985.

About the third week of August 1985, Rex Hutchens, acting for the appellees, visited appellants at their home in Tucson seeking an extension on the October due date. Appellants informed Hutchens that their financial situation precluded them from granting an extension. Hutchens told the appellants that he did not have the money to pay off the note and would attempt to find a purchaser of note.

In late September or early October 1985, Hutchens informed the appellants that he would not make the September payment, which was already delinquent, and did not intend to pay off the note when it became due on October 29. In September, appellants defaulted the appellees and noticed a trustee's sale for January 3, 1985, pursuant to the deed of trust.

On December 27, 1985, the appellees filed a petition for a temporary restraining order in the superior court claiming they were in a quandary as to whom to pay. The court granted relief and ordered the trustee's sale postponed for 15 days.

On December 31, a complaint was filed in the bankruptcy court in Reno naming the appellants as defendants and alleging that the instruments or proceeds relative to the deed of trust were property of the bankruptcy estate. As a result, on January 10, 1986, the bankruptcy court restrained the Arizona trustee's sale. The appellants answered the action in the bankruptcy court and requested that all sums due and payable on the note be deposited with the bankruptcy court.

On March 20, 1986, hearing on the preliminary injunction was held in the Superior Court of Pinal County. As a result of the conference in chambers with Judge W. Alan Stookes, who had been assigned the case by Judge McBryde, the parties orally stipulated to deposit any proceeds upon redemption or sale in the bankruptcy court in Reno as requested by the appellants. Judge Stookes had personally contacted the bankruptcy counsel, who assured Judge Stookes that this procedure was entirely acceptable to the bankruptcy trustee. That oral understanding was then entered on the bankruptcy court record in the form of a stipulation and order dated February 13, 1986.

At the conference in chambers, Judge Stookes questioned counsel for Hutchens as to why a preliminary injunction was still being sought, given that the "quandary" as to whom to pay had been resolved. Hutchens' counsel admitted to Judge Stookes that the real problem was that the Hutchens and the McCallums did not have the funds to pay off the note. It was Judge Stookes' further impression that the petition for a temporary restraining order had been merely a device to stall for time.

After the conference in chambers, Judge Stookes entered a preliminary injunction delaying the matter for 45 days or until March 6, 1986, allowing appellees that additional amount of time to pay the note. The court further ordered that if appellees failed to pay within that time period, the trustee's sale would proceed. In either event, payment or sale, the proceeds were, pursuant to the oral stipulation and Judge Stookes' order, to be conveyed by the sale trustee to the bankruptcy court trustee.

Two days prior to the expiration of the preliminary injunction, on May 4, 1986, appellees deposited the sums due, including $6,811.40 for attorney's fees with First American Title, the sale trustee. The principal and interest owing were thereafter forwarded to the bankruptcy court. However, the $6,811.40, which represented the attorney's fees, was retained by First American Title at the urging of appellees' counsel, without the concurrence of the appellants.

First American held the $6,811.40 in its own account and requested that the parties stipulate to have the Pinal County Superior Court determine distribution of this amount. No stipulation was entered. Without any stipulation, interpleader or other court order, the money held by First American, without the appellants' knowledge, was deposited into the Pinal County Superior Court on October 16, 1986.

After resolution of the merits, each party brought cross-motions for attorney's fees. Appellants claim that they were entitled to their attorney's fees pursuant to 1) the express conditions of the note and deed of trust; 2) A.R.S. § 33–812, which awards attorney's fees "actually incurred" out of the trustee's sale proceeds; and 3) A.R.S. § 12–341.01 which provides for an award of fees to the prevailing party in an action arising out of contract.

The appellees' position was that they were the prevailing party because the foreclosure sale had been postponed by the entry of a temporary restraining order. They further took the position that, through no fault of their own, they had been required to incur substantial attorney's fees and appellants had contributed to and caused the incurrence of these fees.

The cross-motions for attorney's fees were not heard by Judge Stookes, who had decided the merits of the case, but by Judge McBryde. He awarded appellees their attorney's fees in the sum of $4,000 and ordered that the $6,811.40 paid into court be returned to them. He denied appellants any attorney's fees.

The appellants filed a motion for reconsideration of the fees award. Seven days later the bankruptcy court in Nevada entered a judgment ruling that the appellants were entitled to the full legal and equitable interest in the Hutchens/McCallum note, the corresponding deed of trust, and all proceeds of said note and deed of trust. This judgment was presented to the Pinal County trial court as a supplemental exhibit to appellant's motion to reconsider. The trial court denied the motion and denied both parties' requests for attorney's fees incurred subsequent to the entry of the court's judgment.

Appellees contend that in September 1985 they received a notice from one of the original beneficiaries of the deed of trust that the assignment by Homes Associates to the appellants was unauthorized and that payment should be made to him. The record does not disclose that this demand was made upon appellees in September 1985. But, assuming for the sake of argument that it was, appellees could not sit by idly and refuse to make the payment that was due in September. In order to prevent a default, they were obligated "to tender [their] agreed performance by way of interpleader, leaving it to the trial court to resolve the dispute" between the original beneficiaries and the appellants. *R.H. Pierce Manufacturing Corporation v. Continental Manufacturing Co. Inc.*, 106 Idaho 342, 344, 679 P.2d 142, 144 (1984). Because of the default, appellants properly noticed the trustee's sale. Because of the notice of sale, appellants succeeded in forcing the appellees to pay the balance due on the note. The successful or prevailing party in the trial court was not the appellees, it was the appellants. Appellants' position

was fortified by the ultimate ruling of the bankruptcy court in Nevada.

 Pursuant to the note and deed of trust executed by the appellees, the appellants are entitled to their reasonable attorney's fees. Appellees contend that the appellants should not be entitled to attorney's fees because they are being represented in this case by the firm Linden, Chapa & Fields, P.C., and appellant Edward Linden is a member of that firm. We do not agree. The Lindens initially had retained attorneys outside the firm and had paid substantial fees to those attorneys prior to any involvement by Robin C. Carter and Richard S. Fields, members of the firm of Linden, Chapa & Fields who later represented appellants. It should also be noted that Gloria A. Linden was being represented by the firm and had a substantial stake in the outcome of the litigation. There is no evidence that the law firm agreed to pursue this case without the payment of a fee or a contingency-based fee, either of which would have been perfectly proper.

The order of the trial court is vacated and the case is remanded to the trial court with instructions to enter judgment in favor of the appellants for the sum of $6,811.40 as and for their attorney's fees and any other attorney's fees which the trial court deems proper, together with costs incurred.

Appellants have asked for and are entitled to their attorney's fees on appeal which will be awarded upon their compliance with Rule 21(c), Rules of Civil App. Procedure, 17A A.R.S.

LACAGNINA, C.J., and HATHAWAY, J., concur.